under advisement. Our second case for argument this morning is Wisconsin Central against the Surface Transportation Board. Mr. Los Keaton. Good morning and may it please the court. In this case the Canadian National cannot designate the Belt Railway's clearing yard to receive rail traffic from Canadian Pacific even though the two railroads co-own the belt which exists in the police service. It would help at least counsel, it would help at least me if you didn't do this double switch in which you refer to the litigants by other names. The name of this case is Wisconsin Central against the Surface Transportation Board and I have a lot easier time distinguishing the Wisconsin Central from the Belt Railway from the Sioux Line than I do distinguishing the Canadian National from the Canadian Pacific. So we're not industry specialists and it would help us to use the litigants actual names. Absolutely your honor. The board's decision in this case which ruled that Wisconsin Central can't designate the clearing yard for interchange depends on a brand new interpretation of the century-old interchange statute. The board held that the statutory phrase connecting line requires a direct physical track connection and thus the statute doesn't apply and the board lacks jurisdiction unless such a connection exists. But this court, the Supreme Court and the DC Circuit have found no warrant for that interpretation of the same phrase and have applied the interchange statute even where no physical connection existed. These decisions show that if... I have a quick question for you. That prior dispute with Canadian Pacific regarding the Kirkyard, the board treated the lines as physically connecting at Spalding a conclusion that you didn't appeal or object to in any manner whatsoever. Why why shouldn't we consider that question resolved by the prior litigation between these two same parties? Oh two points there your honor. First that question was not litigated in that proceeding. I think the most you could say then is that the board assumed that there was a connection there but the board did not articulate the interpretation of the statute that it did in this decision and the parties did not join issue on that question. So I don't think that that case actually resolves the question but but even if you think that that it does it doesn't avoid the problem here because the key legal premise from which all of the board's reasoning proceeded in this case was the direct connection requirement as it newly construed the statute in this case. I'm sorry again I really am but on page eight the board quoted from a letter from your chief operating officer that I don't know seemed to me to take the same view of the applicable law as the board does here. Can you explain why the board viewed as the past muster if it seems to be your understanding of the law just a few years ago? What am I missing? The distinction your honor is that we were not addressing in that exchange of letters about Kirkyard the question that is presented here. We were addressing what we could do not what the not the only thing that we could do. In other words we were saying that certainly the statute allows us to designate Kirk but it does not require us to designate I should say we didn't address whether it requires us to designate a location on our own line in the existence of a direct connection because that issue just was not raised. It wasn't joined between the parties and the board didn't address it. It was not until the board actually issued its decision in this case the second decision where it became clear that the board was newly narrowing the scope of the statute based on its view that its own jurisdiction even to decide an interchange question under the statute depends on the existence of a direct connection somewhere in the same general area and that legal premise your honor is contrary to every relevant appellate decision. Before I say more about those cases let me just quickly explain why if you agree with us that these cases control that's the only issue you need to decide. The board's reasoning makes clear that this direct connection requirement was the key premise of its decision here and was necessary to its decision and that's clear for a couple of reasons. First the board itself tied everything else that it said about our power to provide interchange facilities and the supposed rule about designating a facility on our own line to its construction of the scope of the statute and the direct connection requirement. So for example if you look at page 8 of the board's decision which is the same page you were just quoting from your honor in the middle paragraph the board says the receiving carriers statutory obligation to provide interchange facilities is only triggered when there is a physical intersection between the lines of the railroads. So the natural reading of this language is that the facilities should be located on the lines near where the intersection occurs. That's the board explicitly telling you that all of its legal reasoning here depends on its view that the statute applies only when a direct connection exists. This holding was also necessary to the board's decision for another reason which is that it allowed the board to avoid deciding here whether there is actually a direct connection at Spaulding and that your honor I think goes to your earlier question as well. If the board itself thought that it had actually decided in the Kirkyard decision whether there was a direct connection it could have said that. That's not what it said in its decision. It said instead that it was not going to decide that question here because on its view of the statute the case would be moot either way. And the board's construction of the statute thus allowed it to avoid deciding in this case whether there is actually a direct connection at Spaulding. On our view of the statute which is supported by the earlier case law the board would have had to decide that question. So it all really comes back to the direct connection requirement and that requirement your honors is foreclosed by the Supreme Court's decisions in particular in Atchison and in Western Pacific. In Atchison both this court and the Supreme Court considered whether the interchange statute applied to a passenger transfer service among Chicago rail terminals. Essentially a shuttle bus from one rail line to the other. This court said that that service was subject to the Interstate Commerce Act including the interchange provision even though of course there is no direct physical track connection when you're talking about a shuttle bus for passengers from one terminal to another. The Supreme Court then affirmed holding that the passenger transfer service was at least authorized if not required by the interchange statute as a reasonable and proper interchange facility. That reasoning all maps on perfectly here. In this analogy the Belt Railroad is the shuttle bus between two connecting rail lines. The second case that really puts the nail in the coffin for the board's interpretation is Western Pacific which was decided after Atchison. There the ICC held much as the board did here that the interchanging lines incorporates a direct connection requirement. The Supreme Court rejected the agency's interpretation and explained that in context there is no warrant for that interpretation of the statutory phrase and thus the statute applies beyond just the existence of a direct physical connection. The respondents have offered a couple of grounds to try to distinguish these cases but they simply cannot be distinguished. Atchison for I mentioned a passenger transfer and not a freight transfer but there is no separate statute that deals with interchanges for passengers as opposed to freight. There's just the one provision which was originally section 3 of the Interstate Commerce Act and is now section 10742. Likewise the respondents have tried to distinguish Western Pacific as involving the anti-discrimination clause of this statute rather than the interchange clause but there's simply no way to give those two provisions a different meaning. They've always been joined together in the same sentence from 1887 to 1940. They actually referred explicitly to each other and even since then they used the exact same phrase. So there simply is no way to give those visions a different reading based on purpose which in any event is not the justification that the Supreme Court provided in any of its cases for construing the statutory language. I'd like to ask you something. What exactly are you providing by designating clearing yard? Doesn't Canadian Pacific have the same right and ability to use provided by this designation? Is provide synonymous with designate in this context? Your Honor, our view is that provide has to be read in light of the statutory context and in particular the industry customs that the agency itself has long relied on and in that context an intermediate switching carrier like the accepted and indeed commonly used means of interchange. So when you take it in the broader industry context designating a clearing yard is consistent with how the railroads have interchanged in Chicago and elsewhere for over a century and in fact if you look at the DC Circuit's decision in Burlington Northern you'll see that the court there approved exactly this kind of designation this use of an intermediate carrier there it was not the belt but it was another carrier to interchange between two other carriers even though that meant that in context excuse me in that situation the delivering carrier was actually paying the intermediate carriers fees. The DC Circuit explained that that was consistent with long-standing Chicago custom and with railroad industry custom but your honor even if you agree with the respondents about what provide means that still would not give you a basis to uphold this decision for two reasons. First as I was just explaining all of that reasoning is downstream from the board's conclusion about the scope of the statute and the direct connection requirement so you don't even get to the power to provide question unless the board is correct about the direct connection requirement which it isn't and then the second reason is that even if you agree with respondents sorry where did the board hold that power to provide required outright ownership I'm asking for the specific language that created the hold it because I I take the respondents point your honor that they did not say in so many words you must actually own it and so I suppose it is conceivable that they could find some kind of situation where track that you don't own would qualify but in practice given their reliance on corporate separateness I'm not sure what that would look like and certainly if it's not the belt I'm not sure what it would be I'll just briefly say and then I'd like to reserve the balance of my time even if you agree with the respondents about what provide means that still wouldn't justify the rule that was adopted here because on their view if provide means provide for free we should still be able to provide a third parties facilities provided that we are paying the costs there but the board held that even that is not proper so even if you accept their legal premise you end up with a rule that still has no justification in the statute with that I'd like to reserve the balance of my time please thank you thank you thank you miss Chaykin on behalf of the surface transportation board in the United States this court should affirm the board's order here because here the interpreting section 107 for two part of its governing statute based on the statutes text and a century of agency experience and precedent informed by industry custom and practice Canadian National cannot point to a single case and and we're not aware of any cases in which this statute was invoked to require an unwilling delivering carrier whether or not it physically intersects the receiving carrier to interchange on a third party line miss Chaykin can I miss Chaykin I'd like to ask you a question about the statute going back to page 8 of the board's decision in the sentence that we were talking about earlier the receiving carriers statutory obligation to provide interchange facilities is only triggered when there's a physical intersection between the railroads so the natural reading of the language is the facilities for interchange should be located on the lines of the interchanging railroads near where the intersection occurs if that's the case if the interchange must take place on one of the two physically connecting lines what does power to provide but why is power to provide in this statute certainly certainly Wisconsin Central has the power to provide its own lines for the interchange and if they were going to interchange and the statute could be much simpler if it just said it's going the interchange take place on one of the two lines with the direct physical connection instead we got I what what does that have to do with anything well so so we the board just to clarify the board did not interpret the term power which as Wisconsin Central pointed out can have a variety of interpretations we we simply said that it is not providing interchange facilities to simply point to the facilities and services of a third party well power to provide power to provide certainly power to provide just means I mean just just assume it means the ability to provide you you must have the ability to make it available for the interchange let me just finish real quick that language is totally unnecessary if the interchange was to take place on Wisconsin Central's lines of course they have the ability or the power to provide their own lines not necessarily I you can imagine situations where the term power can do work here like for example if a damage occurs to the facilities and they cannot physically provide those facilities or that facility is at complete capacity and will not admit another train for purposes of interchange that term power can do additional work and is not completely overlapping with the term providing and and again we did not limit the board did not limit the providing to only facilities that a carrier owns outright there are a number of different kinds of ownership and operating agreements in the industry long-term leases where the carrier has exclusive operating rights over the track so there are situations where you may not have outright ownership of a line and yet it can still be considered one's own line for the purposes of providing interchange facilities but it is important to note that no past disputes loses me counsel if one has power to provide by virtue of contract for example you lease a line and you have power to provide interchange on a lease line why is that any different from the power to direct belt railway to make the connection it's just another contractual power here our case law in the interchange facilities context has long been reluctant to compel interchange arrangements and exercise voluntary or permissive rights this Burlington northern there are three potential issues in this case and I I think that the board has mixed them up and I don't want that to happen in the oral argument one question is may a receiving character ever designate a willing third party to receive traffic and the board seems to have said no second question you said unwilling don't contradict a judge while asking a question I didn't I just didn't hear I'm sorry you know that zoom is difficult enough as it is but yeah let's start at the beginning may a receiving character ever designate a willing third party to second question if yes is the designation of belt railway reasonable compared with where the interchange now occurs and third if the answer to both questions is yes who pays the board and now you counsel seem to be smuggling views about questions two and three into the answer to question one but as I read the board's decision the only thing it purported to answer was question one and it said a receiving character never can designate a willing third party to receive traffic that's the legal question and I think the difference it slight difference would be that the board's determination was that they cannot the receiving carrier cannot unilaterally you know the receiving carrier has a interchange partner here it is the delivering care the delivering carrier has to somehow get their cars over to a third party interchange location if there is an interchange location on a third party and past precedent has said that we cannot compel a delivering we cannot compel a receiving carrier to exercise permissive rights in order to affect interchange on a third party line so the board apply that in the opposite direction to say that we cannot compel a delivering area to use its whether or not the council third party as well so read my lips even if you can't hear that I'm trying to apologies your honor how is the board's decision consistent with the phrase that are within its power to provide this is a phrase that talks about designation by the receiving carrier so I don't see how one can understand those words in light of statements about the delivering carrier because this is not about the in our past precedent the right to designate has always been in cases of physically intersecting carriers or carriers attempting to establish physical intersection in order to get the agency to apply the statute to their interchange situation this right to designate is a starting point for mutual negotiation it is not in an absolute right it isn't it is always consistently coupled with an obligation to provide a free route to an interchange point on the receiving carriers online so there is some degree of overlap in the case law in terms of what provide means provide cannot be simply designating it means actually affording something of one's own for free so the decision would not necessarily all that the board said here was that we cannot compel the parties to interchange on a third party line carriers are absolutely free to interchange on third party lines if they want to the board's interpretation simply says that under the minimum requirements of the statute and it is very broadly written the minimum requirement is for a receiving carrier to offer some facility on their own line and provide a free route to a place reasonably near the intersection of their lines but beyond that the parties are absolutely free to reach mutual agreement particularly when third parties are involved I mean we have a carrier here that is jointly owned and controlled by six different class one carriers and central only has a sixteen it's the right by contract to require Belt Railway to do the interchange and Belt Railway is willing to do it it's not litigating trying to deny that there's such a right who cares whether the percentage of ownership is sixteen point two seven or ninety eight point three it's it's a question about what compelling another carrier to use those I asked a concrete question what difference can the percentage of ownership make well even if it doesn't we have said that a hundred percent all right your answer is none it does not make any difference so why did you emphasize it because they were asking us to determine whether the Belt Railroad is Wisconsin Central's own line here and based on past precedent that even a hundred percent is not enough we concluded that sixteen percent is probably not enough as well particularly when there are five other carriers none of whom by the way have come in to complain about the board's interpretation here there is no evidence that this is going to upset any settled expectations parties have for for a hundred years been reaching mutual agreement to interchange and it has long been the board's policy which the board emphasized here just to not compel particular interchange points to leave that those technical and complex discussions this comes down to an argument that sounds like well the statute says the receiving carrier can do this but it's long been the board's policy not to honor the statute so there I must say I don't find that a very good to say no I would I would disagree nothing in the statute mentions a receiving carrier or a delivering carrier it simply says that all carriers shall provide interchange facilities between you know its line and a connecting line of another carrier the receiving carriers right to designate is not in the statute it has arisen as a matter of practicality in practice and it has always been limited and circumscribed to circumstances of physical intersection and providing a free route to a point on the receiving carriers online even the Burlington Northern case was a question not a question about whether to non-contiguous carriers must interchange with one another they had agreed to interchange with one another necessarily on the third-party line because they didn't physically intersect the only question there was was that agreed-upon interchange point on the receiving or not thank you thank you very much mr. Rifkind mr. Rifkind you're on mute yes I apologize for honor may it please the court David Rifkin for interveners line railroad company the board's decision was was certainly reasonable interpretation of section 107 42 importantly comports with a century of board and court precedent and industry custom and practice the the Peoria case at 93 ICC 3 recognized that the carriers in a direct connection have to provide interchange facilities within the vicinity of that connection and and that like that principles flow down multiple agency and court decisions over the years the the the issue of whether there is a direct connection here is really issue as judge Robner correctly pointed out it was resolved in first proceeding between the two parties and and was not appealed but even even if all that the sue line held here was package rights over met it would still not defeat the direct connection the two railroads directly physically for nine years when it when it benefited both of them and furthermore you know if mr. Rifkin what is your understanding of the meaning of the words within its power to provide my limits or protects the receiving carrier from having to provide facilities that is it is unable to whether including on its on its own lines there are many practical or operational reasons why a but if it but if it can pick if the receiving carrier gets to pick the place and there's this course it would be unreasonable for to select a point on if there was damage if there was hurricane damage at the intersection point or something like that and the receiving carrier said we're going to pick some other point that would be reasonable so reasonableness does some work too right yes your honor it is reasonableness plays in to the effect that the the receiving carrier can't require the delivering carrier to to do things that are unsafe or its work that properly belongs to the receiving carrier that's reasonableness has been applied here thank you mr. Rifkin anything further mr. Washington I just to wrap up your honor I think the panels questions here really get to the heart of this issue as you said judge Easterbrook the statutory language here is very broad and essentially what seems to have happened is that the agency has taken its understandable desire to allow railroads to resolve these disputes through mutual agreement and allowed that to color its view of its jurisdiction under the statute with a result that is simply inconsistent with the statutory language and I don't think I need to say any more there so unless there are any questions we'd ask that you remand this matter to the board well thank you very much counsel the case is taken under advisement the court will now take a 10-minute recess before calling the third case of the day